```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
MAMADOU BOCOUM NDOYE,                                              :
                                                                   :
                                              Petitioner,          :
                                                                   :           25-CV-8856 (VSB)
                    -against-                                      :
                                                                   :           OPINION & ORDER
                                                                   :
WILLIAM P. JOYCE, IN HIS OFFICAL CAPACITY                          :
AS DEPUTY FIELD OFFICE DIRECTOR OF NEW                             :
YORK, IMMIGRATION AND CUSTOMS                                      :
ENFORCEMENT; KRISTI NOEM, IN HER                                   :
OFFICIAL CAPACITY AS SECRETARY OF                                  :
HOMELAND SECURITY; AND PAMELA BONDI,                               :
IN HER OFFICIAL CAPACITY AS ATTORNEY                               :
GENERAL OF THE UNITED STATES,                                      :
                                                                   :
                                              Respondents.         :
                                                                   :
------------------------------------------------------------------ X
```

Mamadou Boucom Ndoye
Goshen, NY
*Pro Se Petitioner*

Charisse Smith Ndoye
New York, NY
*Next Friend for Pro Se Petitioner*

John E. Gura, Jr.
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

     On October 25, 2025, Petitioner filed the initial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 through his wife and next friend, Charisse Smith Ndoye. (Doc. 1.) On November 18, 2025, a proposed amended petition was transmitted to the Government and the

Court by email, and the First Amended Petition was filed on December 4, 2025. (Doc. 27 ("Am. Pet." or "Amended Petition").) Because immigration authorities improperly detained Petitioner in violation of their own regulations, Petitioner's writ of habeas corpus is GRANTED.

I.   **Background**

Mamadou Boucom Ndoye ("Ndoye" or "Petitioner") is a Malian national who has been living in the United States for over fifteen years. (Amended Petition ¶ 10.) Petitioner has been residing in the United States subject to a final removal order since approximately 2008, having been granted an Order of Supervision ("OSUP") on December 18, 2009. (Doc 22-1 ("Operative OSUP").) On October 21, 2025, Petitioner was arrested in the vicinity of Canal Street, (Doc. 28 (Transcript from November 13, 2025 Order to Show Cause Hearing ("Tr.")) at 4:7), and Petitioner's OSUP was revoked, (*see* Doc. 22-2 ("Revocation of Release" or "RoR")). There was no notice provided to Ndoye concerning his detention, (Tr. 4:9-11), which was carried out as an "administrative arrest" that was part of "an operation [] to check on people who were working or selling objects in and around Canal Street," (*id.* at 5:4-10.)[1] The Revocation of Release was entered "pursuant to 8 C.F.R § 241.4," (RoR), and was signed by Field Office Director Ruben Perez, (*id.*).

II.  **Procedural History**

On October 25, 2025, Petitioner filed the initial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 through his wife and next friend, Charisse Smith Ndoye.[2] (Doc.

---

[1] The Government's position is that "probable cause and things like that, are inapplicable in terms of administrative arrests. And that's what occurred here. They were just doing an operation on Canal Street, checking identification, just going up to people." (Tr. 5:11-20.)

[2] "[A] next friend must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the next friend must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) (internal quotation marks omitted). Here, in part based upon the manner of his arrest and detention, Petitioner has been unable to prosecute the action on his own behalf, (*see* Doc. 19 (failing to file the amended petition in full on the docket)), and Ms. Ndoye, Petitioner's wife, has shown that she is dedicated to

1.)  At the time of the filing of the petition, Petitioner was detained at the Orange County Correctional Facility in Goshen, New York.  (*Id.* ¶ 4.)

On October 27, 2025 I filed an order directing the Government to answer the writ within three days, pursuant to § 2241, providing Petitioner with an opportunity to reply by November 3, 2025, and scheduling an order to show cause hearing for November 4, 2025.  (Doc. 5.)  I also ordered the Government not to transfer Petitioner out of the country to preserve my jurisdiction pending a ruling on the petition, and that "Petitioner shall not be transferred except to a facility within this District, the Eastern District of New York, or the District of New Jersey absent further order" in light of Petitioner's interests in participating in further proceedings before this Court.  (*Id.*)  After I granted two extension requests from the Government, the Government filed its response on November 7, 2025, (Doc. 15), supported by a memorandum of law, (Doc. 16), a declaration from Deportation Officer Jonathan Quizhpi, (Doc. 14), a copy of a 2008 Notice to Appear, (Doc. 15-1), Petitioner's Order of Removal, (Doc. 15-2), correspondence from 2008 with the Malian Embassy, (Docs. 15-3, 15-4), and an inoperative OSUP from May 9, 2009, (Doc. 15-5).

On November 13, 2025, I held an order to show cause hearing regarding why the writ should not issue ("Order to Show Cause Hearing" or "Hearing").  At the Hearing, next friend

---

Petitioner's best interests, based on her significant relationship to Petitioner and her conduct to date.  *See Doe v. Hochul*, 139 F.4th 165, 179 (2d Cir. 2025) ("[D]istrict courts should examine the purported relationship between the next friend and the real party in interest to determine whether the next friend appears 'truly dedicated to the best interests of the person on whose behalf he seeks to litigate.'" (quoting *Whitmore*, 495 U.S. at 163)); *Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) ("The existence of a significant relationship enhances the probability that a petitioner is a suitable next friend, i.e., that a petitioner knows and is dedicated to the prisoner's individual best interests"); *Mendonca v. I.N.S.*, 52 F. Supp. 2d 155, 160 (D. Mass.), *aff'd*, 201 F.3d 427 (1st Cir. 1999) (determining that the wife of an immigration habeas petitioner was dedicated to his best interests).  Several courts in the Southern and Eastern Districts of New York have decided habeas petitions in recent months brought by a next friend with a significant relationship to a detainee in this manner.  *See, e.g.*, *Mcdonald v. Francis*, No. 25-CV-09355, 2025 WL 3295906 (S.D.N.Y. Nov. 26, 2025); *Malets v. Francis*, No. 25-CV-10058, 2025 WL 3484882 (S.D.N.Y. Dec. 4, 2025); *Iza By His Next Friend Iza v. Larocco*, No. 25-CV-6915, 2025 WL 3712274 (E.D.N.Y. Dec. 22, 2025).

Charisse Smith Ndoye transmitted a copy of a proposed amended petition to the Court. (Tr. 2:24-3:5.) At the Hearing, I requested that the Government prepare a supplemental declaration in response to specific items I identified during the Hearing to facilitate my rendering of a decision. (Tr. 8:18-9:5.) On November 19, 2025, the Government filed a letter stating that it would file a supplemental declaration to address these issues by November 25, 2025. (Doc. 18.) On November 25, 2025, the Government filed a declaration with some but not all of the items I requested in the Hearing. (Doc. 21.) On November 26, 2025, I issued a short order regarding deficiencies with the supplemental declaration. (Doc. 24.) Also on November 26, 2025, the Government filed a further supplemental response that cured some of these deficiencies. (Doc. 22.)

On November 19, 2025, Petitioner filed a document that included the signed final page of the proposed Amended Petition which was provided to me during the Hearing and three other document pages, two of which were from that Amended Petition. (Doc. 19.) This document was entered on the docket on November 24, 2025. (*Id.*) On November 18, 2025, a full copy of that proposed amended petition was provided by email to the Court and counsel for Respondents from the email address associated with the next friend. (*See* Doc. 20.) On November 25, 2025, I issued an order granting leave to file the Amended Petition. (*Id.*) However, the Amended Petition was not filed until December 4, 2025, when I issued an endorsement on the Amended Petition which had been provided to me during the Hearing, (Doc. 26), and the Amended Petition was filed the same day, (Doc. 27). The Government filed its response on December 16, 2025 (Doc. 30 ("Supplemental Response" or "Supp. Resp.")), accompanied by a second declaration from Deportation Officer Jonathan Quizhpi, (Doc. 31), and a supplemental return, (Doc. 32), attaching a copy of a U.S. Customs and Border Protection Query Result for Petitioner, (Doc. 32-

4

1), a copy of travel documents for Petitioner, (Doc. 32-2), and a copy of a Delegation Order delegating some enumerated authorities to specific officers within Immigrations and Customs Enforcement ("ICE"), (Doc. 32-3 ("Delegation Order")).  Petitioner filed his reply through his next friend on December 23, 2025 with the *pro se* office, and it was entered on the docket on December 29, 2025.  (Doc. 33.)

### III. Legal Standard

28 U.S.C. § 2241(c)(3) provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  The Fifth Amendment requires that "[n]o person shall be . . . be deprived of life, liberty, or property, without due process of law."  U.S. Cont. amend. V.  These due process rights apply to all persons in the United States, whether citizens or not.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

If a detention is the result of an agency violating their own regulations, then the Government may not have provided the detainee with the process that they are due under the constitution and the writ can issue.  *See Funes v. Francis*, --- F. Supp. 3d ---, No. 25-CV-7429, 2025 WL 3263896, at *24–25 (S.D.N.Y. Nov. 24, 2025); *E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414–15  (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528, 2025 WL 1927931, at *3–4 (S.D.N.Y. July 13, 2025); *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at *2–3 (S.D.N.Y. Jan. 15, 2026).  "The common-law history of the writ underscores that the traditional remedy in habeas is release from illegal custody." *Funes*, 2025 WL 3263896, at *24 (citing *Preiser v.*

*Rodriguez*, 411 U.S. 475, 484 (1973)); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention." (emphasis in original)); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008).

Pro se litigants are afforded "special solicitude" and their filings must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021) (construing habeas petition liberally because of special solicitude due to pro se litigants).

### IV. Discussion

#### A. *Petitioner's Detention Violated Immigration Regulations*

Petitioner is now being detained pursuant to 8 U.S.C. § 1231(a), (Tr. 15:9-21), which governs the "[d]etention and removal of aliens ordered removed." *See* 8 U.S.C. § 1231. Petitioner challenges his detention under § 1231(a). (*See* Amended Petition ¶¶ 22–41 (claiming that Petitioner's detention violates 8 U.S.C. § 1231, the constitution, and the Administrative Procedure Act ("APA")).) In order to assess the validity of Petitioner's detention, I must evaluate whether or not ICE followed their regulations in revoking Petitioner's OSUP. Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 241.4, (RoR), and 8 C.F.R. § 241.4(l) governs the revocation of release of an OSUP. This regulation contains three parts. The first, § 241.4(l)(1), is titled: "Violation of conditions of release" and provides that any "alien who violates the conditions of an order of supervision," is due "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." The second, § 241.4(l)(2), titled "Determination by the Service," describes the additional procedures that apply to the revocation of an OSUP. § 241.4(l)(2) provides four reasons that an OSUP may be

6

revoked: (1) when "[t]he purposes of release have been served"; (2) violation of "any condition of release"; (3) when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien"; (4) or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." § 241.4(l)(2) also provides that whether any of these four predicates can be met is a "[d]etermination by the [s]ervice," i.e., the "Executive Associate Commissioner," or a "district director."  ICE's own regulations therefore only provide for these specific individuals to "revoke release of an alien."  § 241.4(l)(3) provides further parameters for the "[t]iming of review when release is revoked," including a "normal review process" "within approximately three months after release is revoked."  These timing parameters apply to all four bases for the revocation of removal and directly reference "paragraph (l)(1)."  *Funes*, 2025 WL 3263896, at *15 (citing *Callender v. Shanahan*, 281 F. Supp. 3d 428, 432–35 (S.D.N.Y. 2017); *Portillo v. Decker*, No. 21-CV-9506, 2022 WL 826941, at *4 (S.D.N.Y. Mar. 18, 2022)).

### 1. A Unified Reading of 8 C.F.R. § 241.4(l)

The Government maintains that 8 C.F.R. § 241.4(l)(2) and 8 C.F.R. § 241.4(l)(1) are separate bases for detention. (Supp. Resp. 8–9 ("[T]he revocation here is more closely aligned with the procedures set forth in § 241.4(l)(1) rather than § 241.4(l)(2).").)  The Government made this argument before, and it was rejected by Judge Paul A. Engelmeyer in *Funes*, among others.  2025 WL 3263896, at *14; *see also Zhu*, 798 F. Supp. 3d at 410; *Zhang v. Genalo*, --- F. Supp. 3d ---, No. 25-CV-06781, 2025 WL 3733542, at *10 (E.D.N.Y. Dec. 28, 2025).  I find Judge Engelmeyer's decision persuasive.  Of course, in *Funes*, the Government argued that less process was due to those detained under § 241.4(l)(2), claiming that ICE did not violate its own regulations by providing the "procedural safeguards" of "notice" and an "informal interview" to

7

those detained who were not alleged to have violated a condition of release. 2025 WL 3263896, at *14. Here, the Government argues that less process is due to those detained "under § 241.4(l)(1)," claiming that they are not bound to have an "Executive Associate Commissioner," or a "district director," revoke an OSUP when the detainee is alleged to have violated a condition of release. (Supp. Resp. 9.) In any event, the common thread between this case and *Funes* is that the Government is seeking to provide less process than is required by their own regulations to those subject to detention because of the revocation of an OSUP under § 241.4(l).

There is no indication that the Government, in this case or in any cases I have located, has ever revoked an OSUP pursuant to § 241.4(l)(1) or § 241.4(l)(2) alone, rather than pursuant to the procedures outlined by the regulation as a whole. Indeed, at least as of August 6, 2025, the Government was still revoking OSUPs for violation of conditions of release pursuant to "8 C.F.R. [§] 241.4(l)(2)(ii)," which is the specific subpart providing for a violation of any condition of release to be determined by the enunciated officials, a combination of the two bases for detention that Government here claims are separate. *See M.S.L. v. Bostock*, No. 6:25-CV-01204, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025).[3] The construction that the Government urges here cuts against the plain reading of the regulation, as violation of the conditions of release in an OSUP is one of the four explicitly enunciated bases for revocation listed in § 241.4(l)(2) as subject to the parameters listed prior. *See Zhu*, 798 F. Supp. 3d at 410 ("This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (*l*) sets forth a unified set of procedures for the revocation of removal."). If the agency had intended to set out two separate procedures applying to two separate classes of

---

[3] The *M.S.L.* court held that Petitioner was entitled to the process protections of the totality of 8 C.F.R. § 241.4(l), including an informal interview, and so habeas should issue. 2025 WL 2430267, at *11 ("Government agencies are required to follow their own regulations. Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." (internal citations omitted)).

8

individuals subject to removal orders, surely it would have omitted 8 C.F.R. § 241.4(l)(2)(ii), which states whether "[t]he alien violates any term of release" is a determination to be made by the "Executive Associate Commissioner" or a "district director."

Judge Engelmeyer, correctly in my view, also found in *Funes* that the presence of § 241.4(l)(3) further confirms a unified reading. 2025 WL 3263896, at *15. It is undisputed that the timing procedures contained in that subsection apply to all revocations, regardless of whether the revocation is based on a violation of a release condition or, say, that "the purposes of release" had been served, even though § 241.4(l)(3) only directly references § 241.4(l)(1) and not § 241.4(l)(2). *See Funes*, 2025 WL 3263896, at *15. This strongly supports a unified reading of § 241.4(l) and the proposition that all the procedures laid out in that section apply to all individuals whose OSUPs are revoked pursuant to that regulation, such as Petitioner.

In response, the Government argues that in another recent decision a court found that "[s]ection 241.4 offers two bases to revoke an OSUP," and that "either the Executive Associate Commissioner or a district director [must] decide to revoke E.M.M.'s OSUP" only for those aliens' whose OSUPs are revoked pursuant to § 241.4(l)(2). *E.M.M*, 2025 WL 3077995, at *5–6. In *E.M.M.*, Judge Margaret M. Garnett issued the writ of habeas corpus when an "assistant field office director" revoked petitioner's OSUP rather than the appropriate officials required by § 241.4(l)(2). *Id.* at *6. In that case, there were no allegations that Petitioner had violated any conditions of his release, so the court had little trouble concluding that ICE violated its own regulations by improperly allowing for an "assistant field office director" to revoke the OSUP, *id.*, and did not need to engage in the statutory interpretation exercise laid out by the court in *Funes*. Therefore, the dicta relied on by the Government in *E.M.M.* did not directly engage in the statutory interpretation necessary for a definitive holding with precedential weight.

9

I hold here that *Funes* correctly decided, along with the weight of interpretative authority, that the legally consistent reading of § 241.4(l) is a unified reading. Therefore, the holding of *E.M.M.*, namely that habeas should issue when ICE violated its own regulations by improperly entrusting the discretionary authority of the Executive Associate Commissioner or a district director to an assistant field officer, 2025 WL 3077995, at *6, also applies here. As I have already explained, there is no carve-out or exception for § 241.4(l)(2)(ii), which specifically lists "any violation of condition of release" as one of the four bases for the revocation of an OSUP, entrusted to the discretion only of an Executive Associate Commissioner or a district director. I cannot find that this procedural requirement is inapposite to revocations predicated on this basis any more than Judge Engelmeyer could find the procedural requirements of notice and interview inapposite to revocations predicated on other bases. *Funes*, 2025 WL 3263896, at *16 ("The Court is not alone in holding that the text of § 241.4(*l*) sets forth a unified set of procedures governing the revocation of release. Every other court in this Circuit to resolve the issue has similarly held.") (collecting cases)).

### 2. The Delegation Order Does Not Cover the Revocation of an OSUP

In the alternative, the Government maintains that even if an Executive Associate Commissioner or a district director did not issue the revocation, that because there was a delegation order in place from July 25, 2019 issued by the Executive Associate Director Nathalie R. Asher delegating "[a]uthority under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241, relating to warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention," to assistant field officers, that the revocation of an OSUP is authorized by ICE's governing regulations. (Supp. Resp. 10–11 (citing Delegation Order).) Of course, the Government's argument is directly contradicted by Judge Garnett's holding in *E.M.M. See*

10

*E.M.M.*, 2025 WL 3077995, at *6 ("Fatal to the Government's argument, the Delegation Order does not purport to delegate a general authority under 8 C.F.R. Part 241; rather, it does so only with respect to certain enumerated matters, none of which apply to E.M.M."). Judge Nina R. Morrison in the Eastern District of New York has held similarly. *Zhang*, 2025 WL 3733542, at *8 ("In the portion describing the delegation of powers under 8 C.F.R. § 241, the memo states that the Executive Associate Director is delegating certain authority . . . . Not listed is any delegation of authority to order detention itself, or revocation of release."). As Judge Garnett explained, *E.M.M.*, 2025 WL 3077995, at *6, the Delegation Order issued by ICE in 2019 governs four specific points in time along the removal process relating to "warrants of removal" "reinstatement of removal" "self-removal" "and release of aliens from detention," (Delegation Order). Nowhere in the Delegation Order does the authority to revoke an OSUP appear as one delegated to assistant field officers. (*Id.*)

The Government urges that *E.M.M.*, was wrongly decided on this issue,[4] and that "the delegation of authority 'relating to . . . release of aliens from detention' necessarily includes the authority to revoke such release." (Supp. Resp. 12.) However, Judge Garnett's decision in *E.M.M.* is not the only court in the Circuit to have determined that the Delegation Order does not reach as far as the scenario at issue here. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) ("[T]he order specifically delegates to assistant field officer directors the authority under . . . 8 C.F.R. Part 241 relating to warrants of removal, reinstatement of removal, self-removal, and release of noncitizens from detention. That does not include the authority to detain noncitizens or to revoke orders releasing them." (alterations in original) (citations and

---

[4] In contrast, the Government argues that *E.M.M.* correctly rejected in dicta the unified reading of § 241.4(l). (Supp. Resp. 8–12.)

11

internal quotation marks omitted)); *Funes*, 2025 WL 3263896, at *19 ("The Delegation Order . . . gives assistant field office directors authority under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241, relating to *warrants of removal*, *reinstatement of removal*, *self-removal*, *and release of aliens from detention*. Absent from this list of delegated authority, however, is revocation of OSUPs." (alterations adopted) (emphasis in original) (internal quotation marks omitted)); *Roman-Cruz*, 2026 WL 114936, at *3 ("Because the official who revoked Mr. Roman-Cruz's OSUP was not authorized to do so, by the Delegation Order or otherwise, his Fifth Amendment right to procedural due process was violated."); *see also Santamaria Orellana v. Baker,* No. CV 25-1788, 2025 WL 2841886, at *3–4 (D. Md. Oct. 7, 2025) (where a delegation order does not "directly reference[] the authority of an ICE Executive Associate Director to revoke release," it does not delegate authority to revoke release).

The statutory canon of *expressio unius* supports this narrower reading of the Delegation Order. *Funes*, 2025 WL 3263896, at *19 ("[T]he omission of one item from a list of like items implicitly excludes that item.") (collecting cases)). In other words, when Executive Associate Director Asher expressly delegated authority regarding four specific items to "Assistant Field Office Directors [], Supervisory Detention and Deportation Officers, [and] Detention and Deportation Officers serving as Field Program," (Delegation Order), it follows that by omitting a fifth item, namely the "revocation of release," that such a decision was not an accident. *See Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019) (under the *expressio unius* canon, courts should interpret a "legislature's intent to exclude" a remedy excluded from a list of "several" explicitly enunciated while leaving the omitted remedy "to implication.").[5]

---

[5] Another way to look at the issue is that, when interpreting the term "release of aliens from detention" in the Delegation Order, (Doc. 32-3), I should be mindful of the terms preceding it, which are "warrants of removal,"

12

The decision to issue a warrant of removal is governed by 8 C.F.R. § 241.2, and "authorizes an arrest to effect removal." *See Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023).  It is undisputed that Petitioner's detention is not related to the issuance of an arrest warrant, as it was conducted through the revocation of an OSUP.  The decision to reinstate a removal order is governed by 8 C.F.R. § 241.8 and permits the re-removal of an "alien who illegally reenters the United States after having been removed." 8 C.F.R. § 241.8(a).  It is undisputed that Petitioner's detention is not related to the reinstatement of a removal order, as Petitioner did not reenter the United States after having been removed.  Self-removal is governed by 8 C.F.R. § 241.7, and involves the decision to "permit an alien ordered removed . . . to depart at his or her own expense to a destination of his or her own choice." 8 C.F.R. § 241.7.  It is undisputed that Petitioner's detention is not related to self-removal, as the Government has not approved and Petitioner is not seeking to depart at his own expense to a destination of his choice.

Therefore, it is appropriate for me to read the term "release of aliens from detention" to refer to the specific determination by agency officials to release an individual from custody in the first instance, which is governed by 8 C.F.R. § 241.4(e)-(f).  *See supra* p. 12, n.5.  When this decision is made by agency officials with regard to a person in the custody of ICE, it may be a binary one, between release and detention.  The Government argues that this means that any decision to "detain" is axiomatically related to any decision to "release." (Supp. Resp. 14 ("Detention is a decision not to release, while release is a decision not to detain.").)  Not so.

---

"reinstatement of removal" and "self-removal." *See Yates v. United States*, 574 U.S. 528, 543 (2015) ("[W]e rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)).  These three previous terms all refer to specific decision or inflection points in the removal process enunciated in the governing regulations, each of which is governed by a specific subsection within the broader regulation whose header matches the underlying determination.

13

Whether this is true as a matter of logic depends on the status quo *ex ante* – if an individual is in custody or detention, then perhaps, it may be said that a decision to detain is "related to" a decision to "release" an individual on an OSUP, as the two are flip sides of the same decision. This decision point is covered by 8 C.F.R. § 241.4(e)-(f). However, when an individual is on supervised release the decision by the agency is not between "continued detention" and "release," but rather between continued liberty and re-detention or revocation. That latter decision is not one that the Delegation Order entrusts to Assistant Field Officers.

The Government is correct that the Second Circuit has required courts to implement a broader reading of "relating to" than "arising out of." (*See* Supp. Resp. 11 (citing *Coregis Ins. Co. v. American Health Found.*, 241 F.3d 123, 128–29 (2d Cir. 2001)). Indeed, in a colloquial sense, everything contained in 8 C.F.R. § 241 is related to everything else in 8 C.F.R. § 241, since it is all part of one regulation that is supposed to govern agency conduct relating to detention and removal following an immigration hearing. However, the Government's reading of "relating to" would, in essence, have me essentially find that the Delegation Order enacted not a delegation of authority for four specific actions to be taken by Assistant Field Office Directors, but rather a blanket delegation of all authority under § 241 to Assistant Field Office Directors.

This cannot be the appropriate reading of the Delegation Order, as it would render the text of the Delegation Order superfluous. It is black letter law that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Market Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) (internal quotation marks omitted). The Government's interpretation contains no limiting principle and would all but read the "relating to warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention", (*see* Delegation Order), language out of

14

existence and constitute a broad general grant of authority to Assistant Field Office Directors and the other enunciated officers in the Delegation Order to implement 8 C.F.R. § 241 in its entirety. It is also telling that Petitioner never proposes that "related to" be interpreted in the same way as "arising out of" or argues that I must find such an equivalence in order for "revocation of an OSUP" to be outside of the ambit of the "release of aliens from detention." (*See* Amended Petition *passim*.) In other words, the Government has put forth an interpretation that is neither proposed by Petitioner nor required to reach the relief requested, and the plain language of the regulation and long-standing canons of statutory interpretation command a different result.

        8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.4(e)-(f) cover different decision points. Only the latter—8 C.F.R. § 241.4(e)-(f)—can fairly be said to be covered by the Delegation Order. The Government goes to great lengths in their response to argue that because the Delegation Order pertains to "release" from "detention" that I should find the delegation to cover § 241.4(l) as well as § 241.4(e)-(f). (Supp. Resp. 11–13.) However, this does not necessarily mean that revocation or re-detention is *ipso facto* "related to" release as a legal matter. As noted, the better reading of the Delegation Order is that it was designed to confer the specific authorities listed in a specific subset of regulatory parts to the officers directed therein. Because "the delegation order submitted by the government refers only to a limited set of powers under part 241 that do not include the power to revoke release," and the revocation of an OSUP is not among those listed, ICE has violated its own regulations in detaining Petitioner. *Ceesay*, 781 F. Supp. 3d at 161; *see also Zhang*, 2025 WL 3733542, at *8 ("The Court has thoroughly reviewed this delegation memo, and it does not do what Respondents claim it does. In particular, it does not confer on assistant field office directors the authority to *revoke* a noncitizen's order of supervised release." (emphasis in original)).

### B. *Because ICE Violated Its Own Regulations by Detaining Petitioner, The Writ of Habeas Corpus Should Issue*

Because I decline to read the term "revocation of release" into the 2019 Delegation Order, I find that ICE improperly revoked Petitioner's OSUP and failed to follow its own regulations. Such a failure is sufficient to support a claim for a due process violation. *See E.M.M.*, 2025 WL 3077995, at *5–6; *Zhang*, 2025 WL 3733542, at *15 ("[R]elease would be the appropriate remedy given the Court's finding that ICE did not follow its own regulations when revoking [Petitioner's] liberty."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388–89 (D. Mass. 2017) ("Based on ICE's violations of [8 C.F.R. § 241.4(l)], the Court concludes [that the petitioner's] detention was unlawful," and ordered that the petitioner be released pursuant to his OSUP).

In *Ceesay*, Judge Lawrence J. Vilardo explained why individuals in this country, citizen and noncitizen alike, must be entitled to due process, and illustrated the important questions that the failure to provide the process due to even noncitizens subject to final removal orders raises for the sound administration of justice:

> [H]ow do we know that someone is who the arresting officers say he is? How do we know that a correctly identified noncitizen is a violent gang member and not a family man working hard to put food on the table of his wife and kids? How can anyone feel safe from being swept up and put in jail or deported simply based on being targeted by the government? More to the point: how can we pride ourselves on being a nation of laws if we are not willing to extend that most fundamental right to all—if we are not at least willing to ask, before we lock you up, do you have anything to say?

781 F. Supp. 3d at 166. Similarly, during the Order to Show Cause Hearing, I expressed concerns about the Government's position that ICE had the authority to "check identification of anyone they encounter," "without any reasonable suspicion," (*see* Tr. 6:8-7:1), based on a 65-year-old case, *Abel v. United States*, which blessed use of "the administrative arrest procedure as

16

such," and explained that it was not unconstitutional to arrest "deportable aliens" per se "by order of an executive official," 362 U.S. 217, 233 (1960).  Nowhere in that case or any other controlling caselaw that I am aware of does any court grant ICE carte blanche to check the identification of or detain anyone they see fit.  Although I repeatedly inquired at the Order to Show Cause Hearing whether the Government could provide any evidence that the arrest of Ndoye was predicated on anything more than "happenstance" and whether the Government could provide any information as to how ICE became aware that "Mr. Ndoye is Mr. Ndoye," (Tr. 7:5-9:9), the Government has failed to do so to date.

       The only explanation the Government provides for the arrest procedure is a cursory "DHS Record of Deportable/Inadmissible Alien" stating that "NYC ERO Officers conducted an operation to target several known subjects with issued I-200 Warrant of Arrests.  [Officers] engaged in a consensual encounter with [Petitioner], who matched the physical description and build of the target."  (Doc. 22-3.)  However, the Government did not produce any such I-200 Warrant, or indicate whether there was probable cause at the time when "NYC ERO Officers" initially encountered Petitioner, whether he was the target in question, or whether the arrest was, in fact, anything more than "happenstance."  Moreover, it is not clear what this document means by stating that the encounter was consensual because there is no indication that Petitioner consented to being approached, and the Government indicated at the Order to Show Cause Hearing that Petitioner was required to turn over his identification regardless of consent.  (Tr. 26:2-4 ("Under an order of supervision, an alien is obligated to give his identification when requested at any time.").)  Further, contrary to this record, counsel for the Government also represented during the Hearing that there was no administrative warrant for Petitioner's arrest.  (*Id.* at 5:11-13 ("They didn't have an administrative warrant.  They don't require them.").)

17

To be sure, "not every procedural misstep raises a constitutional issue." *Rombot*, 296 F. Supp. 3d at 388. However, "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' . . . 'and ICE fails to adhere to it, the challenged action is invalid.'" *Id.* (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) (alterations adopted)). Here, the procedure provided by 8 C.F.R. § 241.4(l) is so promulgated. The courts in this Circuit that have held that § 241.4(l) "sets forth a unified set of procedures for the revocation" of an OSUP, *see Funes*, 2025 WL 3263896, at *15 (quoting *Zhu*, 798 F. Supp. 3d at 410), have found that this "provision was designed to give noncitizens the minimal elements of due process—notice and an opportunity to be heard—and to do so close in time to the infringement of their liberty interest," *id.* at *23. The Government's explanation, or lack thereof, for how Ndoye was identified and why he was arrested, is exactly why 8 C.F.R. § 241.4(l) exists, to ensure that "[t]he notion of fair play animating [the Fifth] [A]mendment" is upheld, and to prevent an "agency from promulgating a regulation affecting an individual liberty or interest," and then "with impunity ignor[ing] or disregard[ing]" it. *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991). Absent such procedures, the agency will be free to either engage in preplanned decisions to unlawfully detain individuals and then come up with post hoc rationalizations, or merely randomly stage "encounters" without the intent to unlawfully detain individuals and then create post hoc rationalizations for these unlawful detentions. Under either scenario such procedures are unmoored from the fixed system of laws and regulations that ensures that due process remains a cornerstone of our administration of justice.

The mere fact that an individual may have a final order of removal does not mean that he or she can be detained without any due process. *Ceesay*, 781 F. Supp. 3d at 166 ("The government's argument, however, confuses [the petitioner's] right to an order of supervision,

which ICE indeed has discretion to grant or deny, with his right not to be detained without adequate—in fact, without *any*—process. The right to be free from detention can never be dismissed as discretionary." (emphasis in original)). The question of what or how much process is due to a petitioner subject to a final removal order is an open question that I do not broach here today. However, at a bare minimum, ICE must follow its own regulation, published at 8 C.F.R. § 241.4(l), for revoking OSUPs and detaining individuals subject to final orders of removal. *Id.* ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [the petitioner], his due process rights were violated, and he is entitled to release."); *see also E.M.M.*, 2025 WL 3077995, at *6 ("The lawful revocation of [the petitioner]'s supervised release presents a low bar to the Government, and they may yet choose to clear it, but they have not done so on the present record, and accordingly [the petitioner] must be released from custody immediately.").[6]

Because I find that ICE's improper revocation of Petitioner's OSUP violated his procedural due process rights, I need not address and resolve the other claims raised in the Petition. *See Ceesay*, 781 F. Supp. 3d at 158 n.20 ("[F]or the reasons stated below, [the

---

[6] Although I need not contend with the plethora of misguided arguments initially raised by the Government in their response to the initial petition, it bears mentioning that the Government initially raised the failing arguments that: (1) district courts could not hear challenges to the unlawful detention of aliens subject to final removal orders, (*see* Doc. 16 ("§ 1252(g) eliminates subject matter jurisdiction over habeas challenges, including constitutional claims, to an arrest or detention for the purpose of executing a final removal order."); *but see Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) ("Section 1252(g) does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.")); (2) that the constitutional protections of the Fifth Amendment do not apply to aliens subject to final removal orders, (*see* Doc. 26 at 17 ("[B]ecause [Petitioner] is subject to a final order of removal and his current detention pending removal is discretionary and does not involve a liberty interest"); *but see Zhu*, 798 F. Supp. 3d at 408 ("Petitioner's liberty interests are implicated by his redetention even if ICE has discretion to revoke his supervision. The Supreme Court has emphasized that '[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects.'" (alteration in original) (citing *Zadvydas*, 533 U.S. at 690))); and (3) that APA challenges are categorically unavailable in habeas petitions, (*see* Doc. 16 at 19 ("[T]he APA does not apply here" because challenge implies the invalidity of Petitioner's confinement"); *but see Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 422 (S.D.N.Y. 2025) (finding ICE acted "arbitrarily and capriciously, in violation of the APA" when they revoked the petitioner's parole, and granting habeas relief.)). In responding to the Amended Petition, the Government has abandoned the arguments that the laws and constitution are inapplicable to such challenges, (*see also* Tr. 27:7-10), instead arguing only that their own regulations do not cover Petitioner's habeas challenge.

petitioner] is entitled to the relief he seeks because his detention violates ICE's regulations and due process. So this Court need not, and therefore does not, address whether [the petitioner's] claims under the Rehabilitation Act would lead to the same result.").

### V.  Conclusion

For the reasons stated above, I GRANT the petition and ORDER the Government to release Petitioner from custody as soon as possible after the filing of this Opinion & Order, and transport him back to New York City. The Government is directed to inform Ms. Ndoye as to the expected time and place of Petitioner's release and shall file a status letter to update me about Petitioner's status within two days from the filing of this Opinion & Order.

SO ORDERED.

Dated: February 5, 2026
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge